**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000573
31-JUL-2014
08:31 AM**

NOS. CAAP-11-0000573 and CAAP-11-0000574

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CAAP-11-0000573
STATE OF HAWAI'I, Plaintiff-Appellant/Cross-Appellee,
v.
PATRICK W. DEGUAIR, JR., Defendant-Appellee/Cross-Appellant,
and
ARYSS DAYNE K. KAMAI, Defendant

CAAP-11-0000574
STATE OF HAWAI'I, Plaintiff-Appellant/Cross-Appellee,
v.
PATRICK W. DEGUAIR, JR., Defendant-Appellee/Cross-Appellant,
and
ARYSS DAYNE K. KAMAI, Defendant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR NO. 08-1-0533)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Leonard and Reifurth, JJ.)

In this consolidated appeal, the State of Hawai'i
(**State**) appeals from the Order Granting in Part and Denying in
Part Defendant Deguair's Second Motion to Dismiss Indictment
entered on July 1, 2011 by the Circuit Court of the First Circuit
(**Circuit Court**)[1] (**Second Dismissal Order**). In addition,
Defendant-Appellee/Cross-Appellant Patrick W. Deguair, Jr.
(**Deguair**) cross-appeals from the: (1) July 1, 2011 Order

---

[1] The Honorable Glenn J. Kim presided.

Granting in Part and Denying in Part, Defendant Patrick Deguair, Jr.'s Motion to Vacate the Conviction on Count 2 and Dismiss Count 2 with Prejudice (**Order re Motion to Vacate and Dismiss**); and (2) the August 26, 2011 Order Denying and Overruling Defendant Patrick Deguair, Jr.'s Objections to the Recall of the Jury for Purposes of Polling the Jury (**Order re Jury**).

In its appeal, the State argues that the Circuit Court abused its discretion in dismissing Counts I, III, and IV, and challenges the Second Dismissal Order's Findings of Fact (**FOFs**) 18, 24, 25, 26, 28, and 30, as well as its Conclusions of Law (**COLs**) 4, 5, 6, 7, and 9.

Deguair argues on appeal that the Circuit Court erred when it: (1) reconvened the jury after discharging them and declaring a mistrial; and (2) refused to allow individual voir dire of the jurors regarding outside influences after they were discharged. Deguair challenges: (1) the Order re Jury; and (2) the Order re Motion to Vacate and Dismiss, specifically FOF 2 and COL 18.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced, applicable authorities, and the issues raised by the parties, we resolve the parties' points of error as follows:

On April 9, 2008, Deguair was indicted on the following charges: (1) Murder in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 (1993) & 706-656 (1993 & Supp. 2013) (**Count I**); (2) Kidnapping, in violation of HRS §§ 707-720(1)(d) (Supp. 2013) and/or 707-720(1)(e) (Supp. 2013)[2] (**Count II**); (3) two counts of Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21 (2011) (**Counts III** and **IV**); (4) Place to Keep Pistol or Revolver, in violation of HRS § 134-25 (2011) (**Count V**); (5) Promoting a

---

[2] Deguair's alleged offense was committed on November 27, 2007. Although HRS § 707-720 was subsequently amended during the legislative session of 2008, the changes do not affect the sections of § 707-720 with which Deguair was charged. 2008 Haw. Sess. Laws Act 147, § 2 at 391.

Dangerous Drug in the Third Degree, in violation of HRS § 712-1243 (Supp. 2013) (**Count VI**); and (6) Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a) (2010) (**Count VII**).

At the end of Deguair's first trial, the jury returned verdicts acquitting Deguair on Counts VI and VII, and a mistrial was declared on Counts I through V, without objection, based on manifest necessity arising out of a hung jury. The State filed, and the Circuit Court granted, a motion for *nolle prosequi* without prejudice as to Count V. The Circuit Court denied Deguair's (first) motion to dismiss the indictment as to Counts I through IV.

A second jury trial was conducted. The jury was again unable to reach a unanimous verdict on Counts I, III, and IV. In the first instance, the Circuit Court mistakenly rejected the jury's guilty verdict as to Count II, declared a mistrial as to Counts I, II, III, and IV due to manifest necessity, and discharged the jury. There were no objections to the declaration of a mistrial. After realizing its mistake, over Deguair's objection, the court recalled the jury eight days later and polled each of the jurors as to whether he or she agreed with the guilty verdict and interrogatory responses, as well as whether they would have given the same answer prior to the jury's discharge. They all answered affirmatively, and Deguair was adjudged to be guilty of kidnapping as a Class A felony.

After the jury was again discharged, Juror 4 called the court to report her suspicions that some jurors had "looked at the Internet" and there was a "fear factor" for some of the jurors. The Circuit Court reconvened to question the juror, who then reported three instances of possible juror misconduct: (1) statements during deliberation by the foreperson of the jury that there was "documented evidence" that Deguair had threatened four people, suggesting that she consulted outside sources of information; (2) mention of the name of a "Samoan gang" that may have been involved, which Juror 4 claims did not come to light during the trial; and (3) the foreperson had conducted her own

experiment by putting duct tape on her forearm to see if it left any residue marks, the result of which experiment was reported to other members of the jury.

The other jurors were subsequently questioned. The foreperson confirmed that she had been concerned about gang membership and being a target of retaliation:

> It's probably because . . . people have told us or we've seen on TV where . . . if you're the identifiable person, the foreperson, that maybe there's repercussions after. And so people were afraid. . . .
> . . . you'd get attacked or . . . targeted. So when we started picking our foreperson, one person specifically said, I absolutely do not, cannot, don't want to be it for these reasons. And then I even said, Okay, me too. For that reason, I don't want to do it. . . . And then we ended up doing it randomly.

Several other jurors corroborated Juror 4's testimony that the foreperson had said that she would not say Deguair was guilty in open court. Several jurors recalled discussions of Samoan gangs during deliberation, and some of the jurors' testimony included reference to the fear of reprisal should the jury find Deguair guilty and fear of being the foreperson. It appeared that the topic may have been raised by one of the male jurors based on some source of information outside of the trial testimony. At least one juror researched Deguair on the internet after the jury was dismissed, but before they were called back for the polling.

Regarding the duct tape experiment, the foreperson testified that, after the first day of deliberations, "I wanted to validate the residue part of the evidence that was in the picture, how that would happen. So I took tape and I stuck it on my forearm and waited ten minutes and then pulled it off, and that was it." The foreperson admitted that she brought it up with the other jurors. The court asked her if she understood that she had been instructed not to conduct experiments. She apologized and claimed that she thought she was not permitted to do outside "research," which she did not consider her actions to be, and/or did not recall that she was specifically prohibited from conducting experiments.

The court questioned the other jurors regarding the effect that the foreperson's experiment had on the jury's deliberations. Although the foreperson did not think that the experiment impacted the other jurors, at least one juror stated that it did impact her vote. A second juror stated that it impacted his vote "very little" because "there's too many elements concerning how the tape would be, stay on there, even if it was only on there for a short period of time, you know." Others similarly reported a three to five minute discussion, which was not significant to their deliberations.

After the jury was recalled and polled, Deguair was given time to prepare and file motions. First, Deguair moved to dismiss Counts I through IV with prejudice based on the factors set forth in State v. Moriwake, 65 Haw. 47, 56-57, 647 P.2d 705, 712-13 (1982). Additionally, Deguair filed a separate motion to vacate the conviction on Count II and dismiss Count II with prejudice based on the juror misconduct. After further briefing and oral arguments, the Circuit Court granted Deguair's request to vacate the kidnapping conviction (Count II), but denied his request to dismiss Count II with prejudice pursuant to Moriwake, as memorialized in the Order re Motion to Vacate and Dismiss. The Circuit Court did, however, grant Deguair's motion to dismiss Counts I, III, and IV with prejudice, as set forth in the Second Dismissal Order.

The Hawai'i Supreme Court has held:

> A trial court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion. The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. The burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it.

State v. Hinton, 120 Hawai'i 265, 273, 204 P.3d 484, 492 (2009) (citations, internal quotation marks, and brackets omitted; format altered). Similarly, the "denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion." State v. Lagat, 97

Hawaiʻi 492, 495, 40 P.3d 894, 897 (2002) (citation and internal quotation marks omitted).

(1) The State's Challenge to the Second Dismissal Order. The gravamen of the State's argument is that the record of this case does not support the dismissal with prejudice of Counts I, III, and IV, with the State challenging certain factual findings in an attempt to establish that the Circuit Court abused its discretion in its application of the Moriwake factors.

In Moriwake, with deference to a trial court's properly exercised discretion, the Hawaiʻi Supreme Court observed that "in most cases, serious consideration [must] be given to dismissing an indictment with prejudice after a second hung jury mistrial." 65 Haw. at 57, 647 P.2d at 713. More importantly, in Moriwake the supreme court established the balancing of interests that a trial court must do when it exercises its power to dismiss an indictment with prejudice over the objections of the State. Id. at 56, 647 P.2d at 712-13. The factors necessary to this balancing of the interests of the State and the fundamental fairness to the defendant, with consideration of the interests of the court in the orderly administration of justice, are as follows:

> (1) the severity of the offense charged; (2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known; (3) the character of prior trials in terms of length, complexity and similarity of evidence presented; (4) the likelihood of any substantial difference in a subsequent trial, if allowed; (5) the trial court's own evaluation of relative case strength; and (6) the professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.

Id. at 56-57, 647 P.2d at 712-13 (citation omitted). The supreme court later clarified that "[n]othing in Moriwake indicates that all factors must be given equal weight or that certain factors must be given more weight than others." Hinton, 120 Hawaiʻi at 280, 204 P.3d at 499.

Here, two full, substantially-similar, trials were conducted with the exception of two additional State's witnesses in the second trial. We consider the full record of these trials and the post-trial proceedings, and the Circuit Court's in-court

announcement and explanation of its <u>Moriwake</u> analysis, as well as the entirety of the FOFs and COLs entered by the court in conjunction with the Second Dismissal Order. The Circuit Court carefully considered and weighed each of the <u>Moriwake</u> factors in light of all of the particular circumstances of this case, including the juror misconduct in the second trial, and the seriousness and potential impact of that misconduct on the deliberations of the second hung jury. Notwithstanding the State's challenges to certain aspects of the FOFs and COLs, on the whole of this record, we cannot conclude that the Circuit Court abused its discretion in concluding that the public's interest and the defendant's interest in fundamental fairness would not be served by conducting a third trial on Counts I, III, and IV.

(2) <u>Deguair's Contentions.</u> The gravamen of Deguair's appeal is that he should not be subjected to a third trial on Count II, the kidnapping charge. Deguair's arguments, however, are that: (1) once discharged, the jury could not be recalled; (2) the mistrial on Count II was not based on "manifest necessity" and therefore retrial would violate double jeopardy; (3) Deguair's right to poll the jury upon their returning of the guilty verdict on Count II was violated when they were discharged and recalled days later; and (4) the Circuit Court should have allowed the defense to voir dire the recalled jury concerning their exposure to outside influences after their discharge.

Assuming, *arguendo*, that the Circuit Court erred in recalling the discharged jury and belatedly accepting the guilty verdict on Count II (including any errors related to jury polling), presumably the Circuit Court should have allowed the erroneous declaration of a mistrial to stand, notwithstanding the court's error in initially rejecting the verdict. As implicitly acknowledged in Deguair's alternative prayer for relief in this appeal, the appropriate proceeding would then have been a hearing on a motion to dismiss based on <u>Moriwake</u>. However, that is precisely what happened in this case, albeit with the added complications and considerations stemming from the juror

misconduct, which were addressed in Deguair's separate motion for relief. Deguair's second motion to dismiss the indictment, which was filed on April 28, 2011, specifically argued that, applying the <u>Moriwake</u> factors to this case, Deguair should not be subjected to a third trial on any of the four remaining counts, with particularized arguments concerning Count II. Deguair does <u>not</u> argue on appeal that the Circuit Court erred in any aspect of its <u>Moriwake</u> analysis.

Instead, Deguair argues that the dismissal of Count II based on the juror misconduct was not based on "manifest necessity," and therefore retrial would be barred by double jeopardy. This argument is without merit. As Deguair himself argued in his motion to vacate the conviction on Count II and dismiss it with prejudice, which was also filed on April 28, 2011, "the improper instances of jury behavior described above warrant vacating the kidnapping conviction and granting a new trial on the kidnapping count." In essence, Deguair argued that it *was* a manifest necessity to vacate the conviction on Count II, which the Circuit Court then did. In the Circuit Court proceedings, Deguair further argued in the motion to vacate that, "rather than granting a new trial, Count 2 must be dismissed with prejudice, based on <u>State v. Moriwake</u>, 65 Haw. 47 (1982)," and he incorporated by reference the <u>Moriwake</u> arguments made in his second motion to dismiss indictment, which was filed concurrently therewith. As stated above, Deguair does <u>not</u> argue on appeal that the Circuit Court erred in its <u>Moriwake</u> analysis.

For these reasons, we affirm the Circuit Court's Second Dismissal Order and Order re Motion to Vacate and Dismiss. Because the Circuit Court vacated the conviction on Count II, we

do not address whether the court erred in conjunction with the recall of the jury.

DATED: Honolulu, Hawai'i, July 31, 2014.

On the briefs:

Dwight C.H. Lum
for Defendant-Appellee/
 Cross-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellant/
 Cross-Appellee

Presiding Judge

Associate Judge

Associate Judge